Administrator, et al. Mr. LaMonica for the petitioner, Ms. Brooks for the respondents. Good morning, Your Honors. If it pleases the Court, Joseph LaMonica for the appellant, Captain Frederick Roth. Your Honors, I would certainly rest on the brief, as I'm confident the Court has read our briefs and the record. A couple of the major issues that I would just like to address the Court's attention is some of the afferent things that we had set out in the brief, and I'll use the words defy logic for the purposes of this argument. We noted the differences in standards, which was clearly applied here in an arbitrary and capricious manner. The Administrator put on two witnesses as the record reflects. Dr. Michael Burry, who's very well respected with the FAA, and Dr. Stuart Gitlow. That was the primary case of the FAA against Captain Roth, was those two witnesses. Dr. Michael Burry testified that he's not a psychiatrist, and that's clear in the record. He's not, and he testified that he's not a psychologist. The Chief Administrative Law Judge, on the other hand, held that our expert, Dr. Joseph Tordella, who is a senior AME HIMSS doctor, who was charged with doing, and it's in the supplement of the brief in the AME's handbook, is charged with doing psychiatric evaluations, or at least a primary evaluation of airmen. The Chief Administrative Law Judge held Dr. Tordella, not being a psychiatrist, couldn't testify to those things. Dr. Michael Burry, on the FAA side, was able to testify about those psychiatric issues and was found to be credible. That's the first issue when there was two different standards. The second issue regards the second witness, the second witness being Dr. Stuart Gitlow, the expert that the Administrator hired in this case. Dr. Stuart Gitlow is a well-respected psychiatrist. There is no question that he is a psychiatrist. The record clearly reflects that Dr. Stuart Gitlow, in this case, was not given the deposition, was not even given the diagnosis, the changed diagnosis, of Dr. Conrad Schmidt. One of the most pivotal issues in this case, Dr. Conrad Schmidt changes his 1999 diagnosis of psychosis. The Administrator puts forth an expert, which is the only other witness that they use, that is found to be credible by the Chief Administrative Law Judge. I directed questions to Dr. Burry about why Dr. Stuart Gitlow didn't receive that deposition. Dr. Burry was at the deposition. They were evasive at best, couldn't answer the questions. We do know that their expert, Dr. Stuart Gitlow, I don't want to use the word intentionally, but was never given the deposition of Dr. Conrad Schmidt and the changed diagnosis. Dr. Stuart Gitlow testifies, I might have changed my opinion as a matter of how I had been given that. So you have two witnesses that the Administrator presents and is differing of standards. And the other part of that differing of standards is the records themselves. We were held to a standard that from 1999 to the case coming before the court in 2012 and 2013, we didn't provide, according to the Chief Administrative Law Judge, every, and I'll use the word every, document to the doctors or potential people. First of all, there was never any definition of what every was. I don't know what every document was, Your Honors, respectfully. There was tens of thousands of documents in this case. Every doctor that Captain Frederick Roth had seen potentially had records, but I still don't know what every was. Nobody ever quantified that, or the Chief Administrative Law Judge didn't, and the Board never did. But we do know this much. We were held to that standard all the way through the Chief Administrative Law Judge's opinion and then the NTSB Board's opinion adopting the Chief Administrative Law Judge's opinion. You see that we didn't give certain documents, but we didn't produce every document. Never, ever was it ever addressed why Dr. Stuart Gitlow, the only expert that the Administrator called, was not given a 90-page deposition of Dr. Conrad Schmidt, where Dr. Conrad Schmidt changes his 1999 diagnosis. He's not only not given it, Dr. Burry was at that deposition and can't explain why the Administrator didn't give it to him. As a matter of fact, the record reflects, during my questioning, I asked Dr. Burry that question, and the record reflects, I asked him before the hearing, and he said he didn't get it and basically never had considered it. I mean, that's the first time it was even being addressed. So you have two witnesses on the one side that the Chief Administrative Law Judge finds to be very credible, that being Dr. Stuart Gitlow and Dr. Michael Burry. Now, on the other side of the point, I'm not going to go down the whole list. There's a laundry list of doctors that testified on behalf of Dr. Captain, or excuse me, Frederick Roth, the appellate, did not have psychosis. The change diagnosis was done, and that was factually done. But even before the change diagnosis was done, Your Honors, we had overcome the summary judgment in this case. We had enough evidence going into this case before that diagnosis was changed to show that the diagnosis was incorrect to begin with. So although a lot of effort and energy was put into what Dr. Conrad Schmidt had done and then changed, we already had coming into this from Sturgis, Kirsch, Elliott, Glass, Pipkin, O'Connor, Carbox, Dr. Cordella, and the rest of the group, an entire battery of doctors that had seen, treated, had been there with Dr. Captain Roth. Excuse me, I keep calling him doctor. I apologize. These people treated him. They saw him. They saw him in person. Dr. Michael Burry had never met, on the FAA side, had never met Captain Roth. Dr. Stuart Gitlow never met Captain Roth. Never met him. Never treated him. They're both well respected. There's no issue with either one of them, but they had never met him. Everybody on our side of the page, if I can call it that, had seen him, had treated him, and said he did not have psychosis. All of that was dismissed by the Chief Administrative Law Judge in this case, and the record speaks for itself as to why, and going through each one, and a lot of them weren't even talked about. Then Dr. Cordella, I mentioned him before on the different standards. A senior AME HIMS doctor who treated, saw, and under the aviation medical examining standards, said he did not have psychosis, and he looked over the records. The Chief Administrative Law Judge does not find him credible because, again, he didn't look over all, every record, although I don't know what that is. And I find those standards to be very, I mean, obviously arbitrary and capricious using the standard of review, but clearly there was two different standards that were applied here in this case. And that goes on, this records thing goes on, and it's mirrored with Attorney Colbar, who I mentioned. So we call the attorney, his divorce attorney, that being Captain Ross, divorce attorney from back when, who testifies as an attorney, as a member of the bar, here's my testimony, here's what took place. These were things that were going on with his ex-wife, who was being vindictive, who was allegedly going to call the FBI, who was going to do this. I had to file for injunctions with the court, I got court orders, I got him custody. Chief Administrative Law Judge's opinion was he didn't produce documents. So his sworn testimony in this case didn't matter. Unless he came up with documents from 2000, all of that was dismissed. And as a matter of fact, in the NTSB's order, you won't even see, respectfully, you won't see his name mentioned. They don't even address my issue of the total waiver of Attorney Colbar and what he had to say. He had no reason to be there other than as a member of the bar under sworn testimony saying this is what took place early in 2000, 2001. So respectfully, that's the crux of the argument on the different standards. You've certainly seen my position on the Millwood records. You just can't pick and choose those records. If you're going to say the bulk of all the records, when you get to the Millwood records, you can't just take a couple of the pages over here that say one thing and dismiss the other. First of all, those records are a complete abomination, respectfully. But beyond that, you can't take, again, this is my opinion, but you cannot take this sheet and not use this sheet over here that says he has anxiety. I mean, you can't use, we'll use this one over here that says he's got psychosis, but it's not signed. We won't use this one over here that's for some other patient. We won't use this one that's not. We don't know who did the second opinion, but we'll use this one. You just can't, in an arbitrary and capricious manner, you can't just pick and choose one page and not the other. Thank you, Your Honor. I see my time is up. Thank you. May it please the Court, Amanda Brooks on behalf of Michael Huerta, the administrator of the Federal Aviation Administration. The Board's determination that Mr. Roth is specifically disqualified from holding any class of unrestricted AMRA medical certificate is supported by the substantial evidence in this record. Mr. Roth's medical records show that he has a history and clinical diagnosis of two episodes of psychosis as defined under the FAA's medical standards. In addition, he also had continuing symptoms of psychosis observed during an evaluation that took place one year after the second episode occurred. In addition, he was prescribed antidepressant and antipsychotic medication to treat these episodes. Board precedent is clear that even one episode of psychosis is specifically disqualifying for unrestricted AMRA medical certification and renders an individual permanently ineligible to hold an unrestricted AMRA medical certificate. This is consistent with the FAA's medical standards in 14 CFR Part 67, which were promulgated under the FAA's statutory authority in 49 U.S.C. 44703A. Mr. Roth has not shown that it was unreasonable for the ALJ or for the NTSB to credit the FAA's evidence over his own. As this Court held in Dixon, a difference of medical opinion is not enough to show that the NTSB lacks substantial evidence for its decision. In this case, the record shows that the ALJ had a reasonable basis for finding Mr. Roth's medical witnesses and Mr. Roth himself not persuasive and not credible. Can I ask you a question? And this is, you may well not know the answer because it's an empirical question basically, but do you know of a situation in which there has been a pilot who got an initial diagnosis of psychosis, but then years later something else happened that caused a physician to revisit that, or there was sufficient indication that the conditions had been approved such that the person was allowed to have a license to fly? I'm not aware of that, Your Honor. I know that there have been cases certainly where the Board has considered when a treating physician has decided to recant his original diagnosis, and in those cases the Board has said it's incumbent upon the ALJ to assess. They use the word credibility, but I do believe they meant to assess how persuasive the explanation for changing the diagnosis was. In this case, the administrative logic actually continued the hearing to obtain the live testimony of Dr. Schmidt, the physician who attempted to recant his original diagnosis. So in the category of cases outside the field of psychosis, then at least there sounds like there's been situations in which a physician takes a second look and decides that the initial diagnosis was wrong. Are there circumstances in which the ALJ and ultimately the NTSB, I guess, well, there wouldn't be an appeal. Were that re-diagnosis as given effect, as credited? Not that I'm currently aware of, but we're happy to provide cases if we find them. I was just curious if you happened to know of them. So in this case, just to kind of wrap up that point, Your Honor, the administrative logic took testimony from Dr. Schmidt, found that his explanation for why he chose to recant his original diagnosis was not credible. Dr. Schmidt, in fact, never walked away from his original observations or notes. In fact, he confirmed that he observed those symptoms at that time, made contemporaneous notes in the medical records at the time that Mr. Roth was hospitalized, and does not deny that he saw any of that. He simply says now, after being asked to revisit the diagnosis by Mr. Roth, that he perhaps overstated those symptoms. He was told by Mr. Roth, as he stated in his testimony, that he was the only physician ever to have diagnosed Mr. Roth with major depression with psychotic features, the psychotic features being the point that is of most grave concern to the administrator here. And the record shows that that, in fact, is not true. Mr. Roth was hospitalized a second time and was given the same diagnosis, both by the admitting physician and by a physician who examined him at that hospital for a second opinion. And then Dr. Elliott, who evaluated Mr. Roth one year after that second hospitalization, observed continuing symptoms of psychosis and actually recommended that Mr. Roth might want to see going back on medication during an evaluation one year after that. If the court would like, I can briefly address, I see that I have time, Mr. Roth's procedural arguments in this case. The first being that the ALJ's decision to continue the hearing to obtain Dr. Schmidt's testimony was error. In this case, Mr. Roth did not object to the administrative law judge's decision to continue the hearing. He was provided an opportunity to do so on the record and said that he did not object to the ALJ's decision to continue the hearing. Accordingly, we feel that the board properly found that this argument was forfeited. Nevertheless, both board precedent and the federal rules of evidence contemplate that the administrative law judge has the latitude to call and to question witnesses to more fully develop the record. In this case, the administrative law judge took great pains to make sure that the record was fully developed and that his subsequent analysis was also complete. As to Mr. Roth's second procedural argument concerning the amended denial letter, in this case, the FAA under statutory authority 44703 has the ongoing responsibility to evaluate an individual's physical ability to perform the duties of the medical certificate that they either hold or that they apply for, or excuse me, the airman certificate that they hold or that they apply for. And we have an ongoing responsibility to evaluate any evidence that we may find. In this case, we received close in time to the originally scheduled hearing date information from Dr. Schmidt that he had changed his mind with regard to the original diagnosis that he made. Because of that, we were able to depose Dr. Schmidt and then found out during the course of that deposition that we had made an oversight in not including Mr. Roth's history of major depression in addition to his history of psychosis as part of the basis for the denial. In this case, the amendment took place before the Pilots' Bill of Rights was enacted so the board properly applied its procedural rules, which were in effect at the time, which permitted an amendment of the pleadings no more than 15 days before the hearing date. In this case, the amendment took place more than 90 days in advance of the hearing. And with regard to both of these procedural arguments, Mr. Roth has not demonstrated how either of these things resulted in any prejudice to him. In sum, there's nothing arbitrary or capricious about the NTSB's decision in this case, and so we would respectfully ask that you deny the petition for review. Thank you. Mr. LaMonica, you can have a minute in rebuttal. Thank you. Very quickly, as far as the continuance issue goes, we didn't raise it here, so it is waived. We didn't agree to that. The ongoing denial letters, we had briefed that sufficiently. The administrator relies on 821.12a. 821.12a does not apply. It's 821.24. Subpart C of the regulations specifically apply to 44703, petitions for review of medicals. 821.24, new medical issues, new medical matters being raised is what we have here, not this other amendment. If that was the case, they wouldn't have needed to enact 821.24, because if you could amend it any time, you wouldn't have to put a section in there saying if there's new medical evidence, you only have 10 days. There would have been no purpose to that. So a closer look at those two sections would show that 821.24 applies. And where was the prejudice? The administrative law judge continuously said, we spent little time on this major depression recurrent and everything else, which was added in that third order, which we didn't have the time to spend on. I'm sorry, could you explain the prejudice again? I didn't follow that. Your Honor, in two places. The third order comes out on June 25, 2012. The prior one was October 20, 2011. That one just spelled out psychosis. The administrator changes its order. Now, this is the order, not the answer. So we have two things going on. We have the administrator changes its order on June 25, 2012, and adds psychosis and major depression recurrent on that date. Not the any amended pleadings or anything else. It's not the answer. The action, we changed the order. So we've been defending a case all along on psychosis. On 6-25-2012, they changed this to major depression recurrent. Now, where the prejudice comes in here, Your Honor, is that the administrative law judge, the chief administrative law judge, in two places says, we spent little time addressing this issue of major depression recurrent. And you'll see it in several different places where this major depression recurrent issue comes up with the chief administrative law judge holding us accountable that we didn't spend any time or much time on this. Well, number one, it had just changed on 6-25-2012, and this was after the continuance. Everybody was already prepped for this. The order had changed. No amended pleadings or answers had changed. The administrator actually went on and just issued a new order. And if that is the case, the administrator can just continue issuing new orders. They're saying it's a pleading. So this is not a complaint and an answer. 8-21-2012 says they can amend their answer. This is the order from the administrator that they actually changed, saying this is why we're not giving you your medical. And then the chief administrative law judge in several places uses that we spent little time on this issue. And then in the continuance, the chief administrative law judge states that he needs to address this major depression recurrent issue. And we see it coming up again and again with the chief administrative law judge. I don't get a synopsis of where this fell into the overall category, but we did spend a little time on it. We spent a little time on it because it came up in this order, not in an amended pleading, not in an answer, but it came up in an order way after the fact. This case was already scheduled in April and had been continued. How much time did you have between the time that the depression was added to the order and the hearing? Your Honor, I'm just looking at just total dates. It's 6-25-2012. The hearing was scheduled. The second hearing was scheduled October 22, 2012. Several months. It's not that we didn't have. But these witnesses had already been prepped prior, well prior to this for the first hearing. There was a continuance in that hearing. It's not the continuance that we're alleging here that we had raised. So we had already prepped all these witnesses and major depression recurrent, which is not a disqualifier, by the way. It's not a disqualifier under the regulations. So now this comes into play. It slid into play here in June. We did spend a little time on it, to be honest with you. And it was a factor that the Chief Administrative Law Judge and the National Transportation Safety Board, in their order to answer John Williams' question, they factored into this. I don't know where they factored it in because they don't say, here's the weight put on this. But we did spend a little time on it. And it is, respectfully, my last statement, it is procedurally, legally wrong that they did what they did. 821-24 does not allow that. You've got 10 days after that, after any new medical evidence, to file an amended answer. Not go and change the order. File an answer if you want to change your answer. Don't change your order. Change the answer. And that's the statement that I'm making. Thank you. Thank you. Case will be submitted.
judges: Brown, Srinivasan, Williams